754 P.2d 1200

**Dorothy BODINE, Plaintiff–Appellant,**

v.

**Loren BODINE, Defendant–Respondent.**

No. 16785.

Court of Appeals of Idaho.

May 3, 1988.

**164**

Scot M. Ludwig of Davison, Copple, Copple & Copple, Boise, for plaintiff-appellant.

Stanley Welsh of Clemons, Cosho & Humphrey, Boise, for defendant-respondent.

SWANSTROM, Judge.

This is the second appeal, and the third appellate opinion in this case. The dispute centers on a property settlement agreement executed at the time of the parties' divorce in 1976. Three years later Dorothy Bodine brought an independent action to set aside the agreement. She contended that her husband, Loren Bodine, had misrepresented the value of the community property. The district court (Hon. J. Ray Durtschi) granted summary judgment in favor of Loren. On appeal this Court, in *Bodine v. Bodine*, 103 Idaho 185, 646 P.2d 427 (Ct.App.1982), reversed and remanded for reconsideration of the summary judgment motion. Loren Bodine's petition for review was granted and the Idaho Supreme Court later decided that the case should be remanded for trial on the merits because material issues of fact existed. *Bodine v. Bodine*, 105 Idaho 477, 670 P.2d 884 (1983).

On remand the district court (Hon. Robert G. Newhouse) addressed the issue of misrepresentation. Judge Newhouse found that the value of assets exceeded the value represented by Loren during the settlement agreement negotiations, and that Loren knew he had understated the value of the assets. However, the court also found that Dorothy knew these values were false or dubious and that Dorothy had not completely relied on the truth of Loren's statements in signing the agreement. Judgment was entered in favor of Loren, upholding the settlement agreement. Neither party was granted attorney fees, but costs were awarded to Loren.

Dorothy Bodine appeals the district court's decision. She argues that the district court erred: (1) in failing to hold that Loren's representations of value of items of community property were a warranty upon which Dorothy was entitled to rely; (2) in finding that Dorothy was suspicious of the values stated by Loren, that she knew many of the represented values were false and that she did not rely on them completely; (3) in concluding that Dorothy failed to prove fraud in a degree sufficient to overturn the property settlement provisions that were incorporated into the judgment of divorce; and (4) in awarding discretionary costs to Loren. We affirm for reasons which follow.

We turn first to the question of whether Loren's representations of value, later expressed in the property settlement agreement, constituted a warranty upon which Dorothy was entitled to rely. A warranty is commonly defined as:

> an assurance by one party to a contract of the existence of a fact upon which the other party may rely. It is intended to relieve the promisee of any duty to ascertain the fact for himself, and amounts to a promise to indemnify the promisee for any loss if the fact warranted proves untrue.

17A C.J.S. *Contracts* § 342 at 325 (1963). The district court did not expressly say that the values ascribed to the various items of community property were warranties. The court did hold, however, that the values were material statements of fact.

The general rule is that representations of value are expressions of opinion and do not constitute a basis for fraud. *Reese v. Cradit*, 12 Ariz.App. 233, 469 P.2d 467 (1970); *Dolson Co. v. Imperial Cattle Co.*, 624 P.2d 993 (Mont.1981). However, the general rule has been reshaped by the special circumstances prevailing between a married couple attempting to divide community assets incident to a divorce or legal separation.

A fiduciary relationship exists between the spouses throughout the marriage. In Idaho the relationship continues even after the spouses have separated or one has filed a complaint for divorce. Only when the marriage is dissolved does the fiduciary relationship cease. *Compton v.*

*Compton,* 101 Idaho 328, 612 P.2d 1175 (1980); *McDonald v. Barlow,* 109 Idaho 101, 705 P.2d 1056 (Ct.App.1985). In *Compton* our Supreme Court said:

> This fiduciary duty extends to the parties' negotiations leading to the formation of the property settlement agreement during marriage, and requires, at least, a disclosure by both parties of all information within their knowledge regarding the existence of community property and of pertinent facts necessary to arrive at a reasonable valuation of the property. Like a business partner, each spouse is free to adopt a position favorable to himself or herself regarding the property's valuation, its inclusion in the community, or other such issues. They are not free, however, to resolve such issues unilaterally by concealing the very existence of particular items or amounts of property.

101 Idaho at 336, 612 P.2d at 1183. After *Compton* two things are clear. A spouse may, consistent with his or her fiduciary duty, take a position as to the value of the various items of community property. This idea comports with the right of any property owner to form and express an opinion as to the property's value when value is at issue. The idea that a spouse is free to assert the value of an asset is not consistent with the idea that an expression of value can be relied upon as if it were a statement of a material fact. Thus, where value is concerned there is little room for a warranty theory.

■ However, *Compton* makes another important point. The fiduciary duty requires at least that both spouses disclose "all information within their knowledge regarding the existence of community property and of pertinent facts necessary to arrive at a reasonable valuation of the property." *Id.* The failure of a spouse to make such disclosures may be grounds for setting aside a judgment that divides the community property inequitably. *See, e.g., Golder v. Golder,* 110 Idaho 57, 714 P.2d 26 (1986).

■ Here, Dorothy is not claiming that Loren failed to disclose the existence of some item of community property. Rather, her contention is that she had no independent knowledge of the value of various business assets managed and controlled by Loren; that she trusted Loren to state the actual fair market value of the assets; that, in fact, he deliberately understated some of the values. The district court found that Loren knowingly understated the values. This finding has not been challenged on appeal. The court made no findings as to the actual value of the assets at the time of the divorce. The court merely found that the value of marital assets exceeded $446,000, the total value stated by Loren. "However," the court said, "considering the problem of the marketability of these assets, the values were not [under]stated to the extent contended by [Dorothy]."

The district court avoided having to determine the value of the assets because the court found that Dorothy had not completely relied upon the truth of Loren's statements. As we have noted, Dorothy has challenged that finding. Consequently, we shall first consider whether Dorothy had any right to rely on Loren's statements of value. In view of the statement in *Compton* that "each spouse is free to adopt a position favorable to himself or herself regarding the property's valuation," we cannot find a basis for holding that Dorothy had a right to rely upon Loren's valuation. Dorothy has pointed to no evidence showing that Loren failed to disclose information or pertinent facts within his knowledge necessary to arrive at a reasonable valuation of the property.

Admittedly, Dorothy was at a disadvantage initially. She was suffering from health and emotional problems that interfered with normal activities. Loren was a real estate broker who operated both partnership and corporate ventures with another broker. Dorothy had never actively participated in the businesses and investments conducted by Loren. As a result she lacked the detailed information which Loren had. In the divorce action, however, she was represented by experienced counsel. Negotiations occurred between counsel for

the parties over a period of months. During this time Loren answered interrogatories. His deposition was taken. Loren or his accountant responded to numerous questions concerning the businesses and investments in which the Bodines had an interest. Some inquiries were made regarding valuation methods and whether stated values were market or book values. Often the answers showed that book values were given. Information was supplied or offered without apparent reluctance or reservation. Ultimately, the values given by Loren were accepted by Dorothy and her trial counsel as the basis for division of the community property.

Following the appeal to the Idaho Supreme Court and nearly eleven years after Loren's deposition was taken in the divorce action, Dorothy's divorce attorney had his deposition taken in the present action. The attorney testified:

I will say this. Mrs. Bodine had a good deal of suspicion about Mr. Bodine, and I recognized that immediately and I do recall specifically that I wanted to make sure that Dorothy was perfectly satisfied based upon all the evidence that we'd been able to gather.

You can only be as precise in determining values as the representations that are made to you, and the documents and the information given, and whether I had a suspicion or not that the matters represented to us were true or not, I know that Dorothy had the feeling that they may not have been.

The attorney was also asked whether "in agreeing to accept [the figure Loren's accountant had calculated as being one-half of the community] you and Mrs. Bodine relied on the representations of value made in that summary?" The attorney responded:

I think that's a fair statement; however, I would have to say that we had done our own independent effort to the best we could and with the resources available to determine whether that was in fact the truth, the case.

Q. If you had not believed or had not relied on that figure, would you have accepted the figure?

A. No.

As noted earlier, we have been shown no evidence in the record of this case, or in the record of the divorce action, showing concealment of facts essential to an independent determination of value by Dorothy at the time of the negotiated settlement. The evidence on these issues has been fully developed; the allegations of the parties have been tested at trial. Accordingly, we can now agree with the language from *Compton* quoted in the dissent of Justice Shepard in the earlier appeal from the granting of summary judgment in this case:

"She was thus on notice and free to challenge husband's valuation by coming forward with her own experts, or otherwise attempting to convince the trier of fact that husband's valuation was incorrect. Her inadvertence or misjudgment in failing to do so when the opportunity was ripe is an excellent example of the type of conduct which the independent action to relieve a party from judgment will not lie to correct." *Id.*, 101 Idaho at 337, 612 P.2d at 1184.

*Bodine v. Bodine*, 105 Idaho at 479, 670 P.2d at 886.

We do not mean to suggest that Dorothy's trial counsel was less than diligent because there was no vigorous contest of the values placed on the properties by Loren or by his accountant. As suggested in the findings made by the trial judge in this case, it may have been expedient for Dorothy to have accepted the settlement offer in spite of her suspicions. The court also noted the difficulty of valuing assets which had no clear marketability. The widely disparate opinions of the experts in this case show that subjectivity is still a significant factor where value is concerned.

In the trial court Dorothy had the burden to prove elements of fraud by clear and convincing evidence. From the record now before us, we determine that the court below was correct in concluding that the property provisions of the divorce judg-

ment were not the product of fraud. The statements of value supplied by Loren were statements of opinion and not of fact. The underlying facts were disclosed or sources of additional information were revealed. Many factual matters were stated. Those have not been shown to be false. The general rule in *Compton* that a party is free to adopt a position favorable to himself or herself regarding property valuation applies here. Reliance on such opinions is misplaced. Furthermore, no overreaching on the part of Loren or his agents has been shown. *Sande v. Sande*, 83 Idaho 233, 360 P.2d 998 (1961). Thus, absent proof of actual fraud or duress, no other ground is shown for setting aside the judgment in this case.

Dorothy's last argument is that the district court erred in its award of discretionary costs to Loren. The court under I.R.C.P. 54(d)(1) determined that Loren was the prevailing party and awarded both costs as a matter of right pursuant to Rule 54(d)(1)(C) and discretionary costs according to Rule 54(d)(1)(D). These discretionary costs were comprised of fees for experts hired by Loren including accountants and a real estate appraiser.

The determination of who is the prevailing party is committed to the trial court's sound discretion. *Gilbert v. City of Caldwell*, 112 Idaho 386, 732 P.2d 355 (Ct.App. 1987). That determination will not be disturbed unless an abuse of discretion has occurred. *Chadderdon v. King*, 104 Idaho 406, 659 P.2d 160 (Ct.App.1983). Where the trial court has exercised its discretion after a careful consideration of the relevant factual circumstances and principles of law, without arbitrary disregard for those facts and principles of justice, that exercise of discretion has not been abused and will not be disturbed. *Chadderdon v. King, supra*, (citing *Hutchinson v. Kelton*, 99 Idaho 866, 590 P.2d 1012 (1979) and *Lisher v. Krasselt*, 96 Idaho 854, 538 P.2d 783 (1975)). In making its decision whether a party prevailed the court is to consider the final judgment or result obtained in the action, whether there were multiple claims or issues and the extent to which each of the parties prevailed on those issues. I.R.

C.P. 54(d)(1)(B). From this, a court may determine that a party prevailed in total or in part and award all the costs to one party or apportion the awarded costs between the parties.

■ In her argument, Dorothy notes that the district court found that Loren had misrepresented the value of the assets. The district court, however, specifically determined that Dorothy was not a partially prevailing party. This conclusion was based on the court's determination that she failed to meet her ultimate burden in proving fraud. From the record presented, it is clear that the district court did not abuse its discretion in its determination that Dorothy was not a partially prevailing party and that Loren was the prevailing party. The proof of misrepresentation was one of a number of elements which Dorothy was required to establish to prove her claim of fraud. Success in proving one of these elements does not automatically translate into "prevailing" on a claim or issue of the case. We note also that even if each party prevails in part the court may still determine which party prevailed for purposes of awarding costs. *Gilbert v. City of Caldwell, supra; McGill v. Lester*, 108 Idaho 561, 700 P.2d 964 (Ct.App.1985).

■ We also conclude that the grant of "discretionary" costs under Rule 54(d)(1)(D) was proper. From a determination that Loren was the prevailing party, the court could award additional items of cost under Rule 54(d)(1)(D) if those costs were "necessary and exceptional costs reasonably incurred." Dorothy argues that the expert fees were not reasonably incurred in light of Loren's misrepresentation. This argument fails to establish an abuse of discretion in the award. Under the standard cited in *Chadderdon*, Dorothy has failed to show that the discretionary decision of the court was in disregard of the facts and legal principles of the case. The district court determined that due to the length of time since the divorce, additional appraisals and their corresponding fees were required. The legal and factual issues raised by Dorothy turned directly on

the value of the property as alleged by Loren. The expert's testimony was, by necessity, an expense incurred in response to the issues presented.

■ Loren has requested attorney fees on appeal. Under I.C. § 12–121 this Court may award attorney fees on appeal if we are persuaded that the appeal was brought, pursued or defended frivolously, unreasonably or without foundation. *Minich v. Gem State Developers, Inc.*, 99 Idaho 911, 591 P.2d 1078 (1979). We are not persuaded that this is true in the case at bar. While our conclusion ultimately upholds the district court's application of *Compton v. Compton, supra*, Dorothy's arguments on appeal have presented an opportunity to clarify the application of *Compton's* legal standards. We conclude that the appeal was not brought or pursued frivolously, unreasonably or without foundation.

The judgment of the district court is affirmed. Costs to respondent.

WALTERS, C.J., concurs.

BURNETT, Judge, concurring in part and dissenting in part.

I concur in the result reached by the Court on the issue of relief from the property settlement agreement. However, I disagree with a portion of the Court's analysis on that issue, and I dissent from the Court's decision on the issue of costs.

I

Judge Newhouse found that Mrs. Bodine did not rely, in fact, upon the representations made by her husband concerning the value of certain items of community property. This finding, supported by substantial (albeit disputed) evidence, is dispositive. Consequently, my colleagues need not have broached the issue of Mrs. Bodine's *right* to rely upon such representations. Not only is this subject addressed unnecessarily but, I respectfully submit, the discussion harbors an error.

In purported reliance upon *Compton v. Compton*, 101 Idaho 328, 612 P.2d 1175 (1980), the Court today broadly states that despite the fiduciary relationship which ex-

ists between spouses, a wife has no right to rely upon her husband's representations concerning the value of community property if facts pertinent to the question of value have been disclosed. The unfortunate import of such a broad rule is that the husband is free to act in bad faith by representing values which he knows to be wrong or unreasonable; and it remains for the wife, using other available information, to avert the fraud. This trivializes the concept of fiduciary duty and, in my view, is not what the *Compton* court intended.

The dominant concern of *Compton*, and of the earlier Supreme Court decision in *Sande v. Sande*, 83 Idaho 233, 360 P.2d 998 (1961), is an act of overreaching in derogation of the fiduciary duty owed by one spouse to the other. Such overreaching can occur on a question of value. It often happens in a marriage that one spouse acquires, and is recognized by both spouses to possess, superior knowledge concerning certain community property. Even if both spouses have access to the same information, the spouse with superior knowledge is better able to interpret the information and to determine the value of the property. I see nothing to commend a rule of law that would allow the spouse with superior knowledge to make a deliberate misrepresentation of value, intending the other spouse to rely upon it. On a question of value, no less than on any other issue, each spouse should be entitled to presume good faith on the part of the other.

I recognize, of course, that values cannot always be identified with precision. A reasonable range of values may exist. Within that range, a spouse is entitled to take a position on value favorable to himself or herself, so long as all pertinent information is disclosed. But when a spouse acts in bad faith, foisting a clearly unreasonable value upon the other spouse, I would hold that overreaching has occurred. A misrepresentation made in bad faith should not be shielded from the law of fiduciary duty by the simple expedient of treating it as a matter of mere "opinion."

## II

I also respectfully disagree with my colleagues regarding the award of costs by the district court. Fees of expert witnesses (beyond the $20.00 per diem) are discretionary costs under I.R.C.P. 54(d)(1)(D). They need not be awarded to a prevailing party simply because that party has incurred them. In the exercise of his discretion, the trial judge should consider whether the expert testimony has been helpful in resolving a material issue.

Here, the fees in question were charged by appraisers who were hired by the husband to give opinions on the value of community property. Their opinions generally supported the representations made by the husband to the wife during settlement negotiations. However, Judge Newhouse expressly found that the husband knowingly had misrepresented the value of community assets. By clear implication, the judge disbelieved the testimony of the husband's expert witnesses. The judge could not have found such discredited testimony helpful in resolving a material issue.

Indeed, Judge Newhouse rejected the positions taken by both parties in this lawsuit. He rejected the husband's position that reasonable values had been communicated to the wife during settlement negotiations. He also rejected the wife's position that she actually had relied upon her husband's representations. Under these circumstances, I would deem it clear that the parties should have borne their own discretionary costs. I would hold that it was an abuse of discretion to impose upon the wife the costs of the husband's expert witnesses, whose testimony the trial judge rejected.